Good morning, Your Honors. Peter Hosharian. May it please the Court, I'll be presenting the argument on behalf of the petitioner. Let's begin with the issue of the A number and the expert witness, I think, which is the most important issue at this juncture. The expert in this was not allowed, or shall I clarify, the expert was given an ultimatum that if he did not provide his A number that the immigration judge would not consider his direct examination. And we believe that that was an extrajudicial, and the judge was completely going outside of her scope of discretion by requiring the expert to provide his A number. The expert testified for over an hour as to his qualifications. The experts testified that he'd been a citizen of the United States since 2001. Was there some reason why the expert didn't want to provide the A number? Was it hard to find? The declaration of the expert states that he felt that he was being abused by the judge and that he did not want to provide any further testimony than he had. His declaration in the motion to recuse states that he was being unreasonably challenged by the judge. The judge was rolling her eyes. Isn't it standard practice to ask for the A number of witnesses in immigration proceedings? Well, that would be true for a lay witness, Your Honor, but not necessarily for an expert witness. I don't see the relevance of providing an A number for the expert witness. Why are we assuming that a witness has an A number? The witness was asked that question by, I believe, the DHS counsel had brought it up and requested his A number. The witness did testify that he came to the United States on originally a tourist visa, and then that was changed to a visa of extraordinary ability. The government apparently wanted to see what that extraordinary ability was in order to cross-examine the witness based on his qualifications as a witness. The witness fully testified that he had gotten his visa because of his extraordinary ability in acting, and he disclosed that information. There was an interesting exchange where the judge said, well, that's important because who knows? He could have been a tap dancer for 20 years, and if he was a tap dancer for 20 years, then he wouldn't be an expert as a journalist or Armenia's political climate, to which the respondent's attorney in the trial court responded that, well, can't a tap dancer become a political expert? And the judge says no, and she says, well, he wouldn't have time to gain that expertise. And we all know that we've had actors in this country who have become the President of the United States, actors who have become Senators and Governors. So right there, the judge's reasoning is completely off. There is no rational basis to have this expert provide his A number. Counsel, isn't it standard practice in trial? I know when I did trials, we would want to get background on another side's expert to try to evaluate, does this person really know what they're talking about? How is it different than in a criminal case where the government is required under Rule 16 to provide an expert's background to the defense? Or vice versa, if the defense is going to call an expert, they have to provide their expert's background to the other side. How is it any different than that? Well, the respondent provided, the respondent testified, the respondent's expert testified. He testified over an hour. He testified, asked for his background. He testified that he was a journalist, that he's written over 100 articles, that he was a TV show anchor, and he interviewed highly prominent Armenian officials. He's traveled to and from Armenia, interviewing people in Armenia, writing articles about the political climate of Armenia. He testified that he was persecuted in the United States, or he was attacked in the United States. His car was burned. Well, I understand the nature of his testimony, but the government or both sides usually have the opportunity to determine, is that really the truth? People can testify about all kinds of things, but until you can really get behind the scenes and look at the documents to evaluate whether that testimony really is valuable. Well, I think there was enough evidence that provided by the respondent to show that, to give ample opportunity for the DHS to cross-examine. I don't see anything that the DHS brought up in their rationale as to why they would need the A number that would show that there's any relevant evidence to be gained from obtaining his A file. Do you have any authority that says that DHS or an IJ cannot ask a witness for their A number? I do not have any authority specifically stating that they cannot ask the witness. But this is the, I think the government, the regulations, the court regulations regarding witnesses. Of course, if it was a lay witness and a relative and went to the gravamen of the case, whether it be asylum, withholding, removal, I think definitely a lay witness would have to provide his A number. But I don't believe that an expert testifying on the political conditions of Armenia, which has no factual relationship with the respondent himself. I can see your, I see your argument that in a way by asking him for his A file number, it's a way of intimidating the witness almost because he's not the one who's being, who's lawfulness, the lawfulness of which residents and presence in the United States is being, is that issue at all? That's not his issue. Right. And that's, that's kind of, you know, are they going to start investigating me for coming in and testifying as an expert witness? So I can see that. On the other hand, I guess the, either it's in the record or the arguments and made that every witness has to provide me number if they have one. Well, that would make it not intimidating because it wouldn't be singling him out. Right. Well, it wouldn't be singling him out. But when, when, when, when you consider the amount of testimony he provided on his qualifications, you've got to ask, why do we need that A number? What, there's still, even he said, I'm, I came here as an, as an actor. Why, you know, that would work. Let me, let me ask you this, if I can. Was it the government who asked that the A number be provided or did the IJ initiate the request? I'd have to, I can, I can look at, see if I can find that when I reserve time for rebuttal. Okay. That would be useful. The reason I ask that question is that this IJ, the record of this IJ in denial of relief is truly extraordinary. If I were an alien seeking some form of relief, as soon as I drew that IJ, I'd say, okay, game's over, I just lost. I mean, the record, the percentage of denials by this IJ is just off the charts. I can see why any rational litigant appearing before that IJ would seek to find grounds for disqualification of the IJ. And I'm trying to figure out if the refusal to supply the A number and the fight that then ensues over that question, leading to a recusal motion, might have happened. So I'm trying to figure out what grounds there might be to support the recusal motion. And maybe if it is the IJ rather than the government who's seeking the A number, that would tell me something. Okay. Well, regardless, Your Honor, the IJ didn't make a statement, basically an ultimatum, if the respondent does not provide his A number, that the expert's testimony will not be taken on cross-examination and the direct will have no effect. So even if she initiated or the judge initiated or the DHS counsel initiated it, it's apparent that the judge made it a very important issue and went along with it and really demanded that the A number be provided. Now, I should know this, but I don't. Were you representing this client in front of the IJ? No, I was not. You were not. Okay. And that also leads to the denial of the interlocutory, the continuance in order for the respondent's attorney to file the interlocutory appeal. Again, the same issues. Or to get another expert. They could have gotten another expert. Yeah. Well, here's a respondent who's detained. It's very difficult for these respondents who may not have the financial means, especially if you're detained, to bring an expert to court and then have that expert be disparaged by the judge and humiliated and intimidated by the judge. Is your client detained now? I mean, your brief doesn't say so. Our rule is if the Petitioner is detained, you're supposed to say so. I don't have that. The short answer is you don't know. I don't know. Counsel, I think there's something in the record indicating he has been released. Am I wrong about that? I don't think you would be wrong. This occurred three years ago, so he would probably be released. But at the time of the hearing, he was detained. Okay. How do we have jurisdiction over this petition? He was convicted of an aggravated felony, right? Correct. You have jurisdiction to hear. It's not an asylum. We're not pursuing the asylum case. The asylum would not, on withholding and convention against torture, you would have jurisdiction to hear this matter. Despite Section 1252A2C, 8 U.S.C.? Well, my understanding is that the appeal or my understanding is that you would have jurisdiction. The only thing the aggravated felony would preclude is a filing of asylum. Okay. Why don't you take the next minute and a half for the rebuttal and get the answer to Judge Fletcher's question. Thank you, Your Honor.  Good morning, Your Honors. May it please the Court, lease us mercy of the Office of Immigration and Litigation for the respondent. My apologies to start with. I'm getting over a cold. I'm a little stuffy and I have a bit of a cough. Just to answer one of the Court's initial questions, on February 28, 2012, the petitioner submitted a ‑‑ I think it was either a letter or notice saying that he'd been released from custody. Okay. So that takes care of that. Yeah. He is no longer detained, just to initially address that. What was the basis for his release? To the best of my recollection, I don't remember. Did he have a dangerousness hearing? I'm not sure if it was specified in the letter. It simply said he was ‑‑ I don't have the letter with me. My apologies. If it did say something to the basis of his release, I'm not ‑‑ That's all right. Go ahead. Sure. I'm sorry. Excuse me. There are four issues before the Court today. The first one, assuming the Court's jurisdiction under 242A2D over a constitutional issue or a question of law, whether the Board erred in sustaining the immigration judge's decision not to accuse herself, where there was no basis in the record that the immigration judge was biased against the proffered expert witness. Maybe she was just biased against every alien. Well, Your Honor, this is ‑‑ Do you know what her denial rate is? Not specifically, no. What do you mean, not specifically? Do you know or do you not know? I don't know. Okay. The immigration judge is, however, notwithstanding any reputation that the immigration judge may have here, the facts specific to this case do not show that the immigration judge showed any particular bias here according to the standards that the Court has set out in Part I. What do we make of the fact that he didn't get to put on the testimony of his expert that would show the country conditions? Your Honor, the standard of fairness here is the opportunity to present evidence. And the petitioner had every opportunity to present evidence here. The immigration judge specifically said in the second hearing, your expert is here, he can testify, whether or not we have the A number will go towards cross-examination and the weight that will give his testimony. The opportunity to testify was there. The fact that the petitioner decided to essentially opt out of the hearing shouldn't hold the government hostage to his due process claim. But then she denied a continuance on top of it. Well, she denied a continuance for an interlocutory appeal. The Court in Laticki specifically said that matters of judicial understanding and her understanding was that the A file might be relevant towards cross-examination, that matters of judicial understanding weren't necessarily showing a bias. And in the process of an interlocutory appeal, the judge simply said, you can appeal this when it goes to the board. There was no necessity for an interlocutory appeal at the time. And the immigration judge's denial of it, simply there's no right to have the board hear an interlocutory appeal. The board doesn't necessarily have to take an interlocutory appeal. And not only that, if one, you know, as an initial matter, I should say that the denial of a continuance is a discretionary matter, and it is the court's jurisdiction of that is barred by 242A2C. However, construing this as either a question of law or a constitutional claim as a due process claim, the board has now considered the issue of the denial of the motion for recusal on appeal and found that the immigration judge did not show bias. And the issue is now moot as to the interlocutory appeal. For that matter, you know, on both of those, on both the matter of the motion for recusal and the interlocutory appeal, frankly, those issues in some ways are related in this case, simply because the board has now considered the issue of the motion for recusal. And, you know, as Your Honors pointed out, the petitioner had a lot of opportunities to present his testimony, to present the expert witness, but he essentially opted out. This wasn't the motion for continuance was simply to file an interlocutory appeal. It wasn't necessarily to present another expert witness or to prepare a statement proffering the expert's witness. The fact is that the board and the immigration judge had no chance to ever determine the weight of the expert's testimony here. So the question doesn't boil down to whether or not this immigration judge has a reputation. It boils down to this specific case. And in this specific case, the immigration judge gave the petitioner the opportunity, a full and fair opportunity to present his evidence, but he declined. I don't think anyone's suggesting it has anything to do with the IJ's reputation. Is it Syracuse Law School that has a database? Sorry? Is it Syracuse Law School that has the database? There's actually databases that keep track of immigrations. It's not a reputational thing at all. It's just statistics. Yeah, there's just a, if you go to, I'm sure you know, you can go to websites and you will find exactly what the record of the IJ is by comparison to all the IJs in the rest of the country by comparison to the IJs in the specific jurisdiction. I mean, just push a few buttons and there's the information. I'm aware of the database. But the standard here essentially is whether there was bias stemming from the extrajudicial source or the immigration judge showed some sort of pervasive bias or prejudice shown in his judicial, well, in this case, her judicial conduct. That's the standard that was set out by the board in matter of examining. And simply based on the facts that are presented in this case, it doesn't rise to that standard. For that reason, the board did not err in sustaining the immigration judge's decision not to accuse herself. Excuse me. Assuming the court's jurisdiction under 242A2C, I mean, I'm sorry. Assuming the court's jurisdiction under 242A2D, then. How about not under just D? Because if you look at the Broomfield case, you don't look to D. You simply say the exclusion from jurisdiction of C doesn't apply. I'm sorry. I don't necessarily. Bromfield. If you read the Broomfield case, are you familiar? Bromfield case. Are you familiar with that case? Yes. As I read that case, it says that if we're not dealing with asylum, but we're rather dealing with withholding or CAT, and we have a decision on the merits, C simply doesn't apply, period. Well, I was referring to the due process issue regarding the recusal. If you're referring to the court, to the board's, to the denial of the withholding application in CAT here, the government stands by its position that 242A2C also restricts the court's jurisdiction over the petition review regarding the denial of withholding in CAT. So. No, no. I understand the government's position. But we've got case law that you're obviously unhappy with. Well. I have to say I'm somewhat sympathetic with the government's unhappiness with the case law, but there it is. No. As I said in my brief, and as Judge Graber recently said in her concurring opinion in Pachenkov v. Holder, 705F3D444, and that was issued in 2012, the government is urging the court to revisit the issue of 242A2C. Do that as a three-judge panel. We can only do that in an en banc panel. From what I understand, the issue was raised in an en banc petition currently in Maldonado versus. I'm not sure we're going to reach that issue in Maldonado. But it wouldn't be, it might not be reached there. But certainly we are urging the court to revisit the 242A2C issue. But you would agree that the three of us can't do anything about that? It seems that there is, that the court's case law here, despite Judge Graber's interpretation of the various decisions, it appears to say that 242A2C is not applicable to the merits of withholding or CAT. However, the government's position is that the court needs to revisit that issue because those cases in which it's been held, in Bromfield and Morales and et cetera, are possibly distinguishable, that they possibly, that they could be limited to 242A2D issues, and also that the, you're most likely familiar with this from the Maldonado case, but that the statute here clearly says. I was on Maldonado, but it was so long ago I don't remember it. Well, and I think counsel, you've clearly preserved the issue. I just think, as highly as I think of these two here, I don't think that these two equal 11. No. So there's only three of us, so okay. All right. Just to make sure. So can I ask you something? My understanding is the expert witness is a United States citizen? Yes. At what point does the A file become irrelevant once you have achieved citizenship in this country? Well, the question here was, I mean, the immigration judge, in fact, said this on the record. The idea wasn't necessarily that they were questioning his citizenship. They were questioning his expertise. And they thought that the A file might bear upon his expertise. It seems kind of attenuated, like a fishing expedition in terms of, I mean, Judge Owen analogized to a criminal trial. I'm analogizing to a civil trial. It seems to me like a fishing expedition to go, you have a U.S. citizen who's proffered his expertise, he's testified to his expertise. Why are we going back to an A file when it's no longer relevant once you're a citizen? Well, as Your Honor pointed out, first of all, the immigration court manual does say that the A number should be provided if applicable. And in this particular case. But is it applicable once you're a citizen? That's my question. It's over. You've become a citizen. And anything having to do with how you became a citizen, it seems to me it's not relevant anymore. Well, the immigration judge simply thought here that, I mean, there's a long exchange there. The immigration judge was looking for a way to exclude the testimony or diminish the testimony. And it was the immigration judge that asked for it, wasn't it? Yes, it was. It was. The immigration judge was conducting an initial, I'm sorry, I always mess up. Was conducting an initial, as you said, looking at his qualifications and thought this information wouldn't be relevant. Whether or not, there are two questions there, however. Whether or not the immigration judge exhibited bias. And whether or not that the A file eventually would have bore on the weight of the testimony. But it seems to me there's something. I don't know if there's any cases on it. But it seems to me fundamentally unfair that once you go through all the processes to become a U.S. citizen, that you would go in to testify. And they're looking at your qualifications. They're examining all of that. And then because you came from another country, that all of a sudden everything you went through to become, to get citizenship status is under scrutiny. It does seem, I mean, I can empathize with that expert witness. It does seem somewhat offensive. He's obviously had his background checked. He's had, you know, you go through a lot to become a citizen in this country. As Petitioner's Counsel pointed out, the A number can be applicable, the A file, can be applicable in numerous situations, even after someone has become a United States citizen. For example, I believe this comes up quite often in cases in which someone is claiming derivative citizenship from their mother or father, and the dates might be relevant, and they might need the A file. There are circumstances in which even after someone has become a United States citizen, an A file might be. Yeah, circumstances like your fraud, and you're going to say you changed your citizenship fraudulently. I think there's a statute on some of these things, but they're all because of something negative about the citizen. Well, as Your Honor was pointing out earlier, the basic question here, whether or not that A file was ultimately relevant in this particular case and what weight it should have been given, and if he had ultimately completely refused to present the A file, but despite that, testified and the immigration judge gave it diminished weight, all of those are speculative at this point because the expert refused to testify at that point. The fact that he was subjectively offended at the request of the A number, which the exchange of the immigration judge there, I should point out in the initial exchange in the first hearing when the A number was asked for, the expert seemed surprised at it, but he ultimately said, that's fine, I'll give my A number, it's not a problem. I don't have it on me, but I'll give it to you and you can look at the file. The motion for recusal didn't come until after the hearing. The petitioner's counsel did raise an objection at that point and there was an exchange with the immigration judge where she explained, I think this might be relevant. She said, basically, I am under the impression that he came in under an extraordinary visa and I want to know why. Maybe it makes him more of an expert than he would be just based on the qualifications. But you don't know. No one knows. So it's just a fishing expedition. Well, ultimately, the question is whether or not the immigration judge showed bias here. And the simple question of asking for an A number and saying this might be relevant towards cross-examination doesn't show bias. There's no showing of bias there. The immigration judge, during the October 26, 2010 hearing, the immigration judge specifically stated, I simply want to see this A file because I want to see how it bears on the weight of this testimony on the cross-examination. So the mother didn't testify either, right? No. I'm sorry. I'm out of time. It's okay. You can answer our questions. Why did the mother not testify? The mother said that she was offended during the second proceeding on October 26, 2010. Both the expert witness and the petitioner's mother were present, by the way, in front of the ‑‑ well, they were present outside the courtroom, but essentially they were before the immigration court. And when the immigration judge refused to recuse herself, the petitioner's mother stated, I'm offended on behalf of the witness. I'm summarizing. But she essentially said, I'm offended on behalf of the witness, and I refuse to testify, and the petitioner did as well. But again, the petitioner isn't ‑‑ shouldn't be able to hold the immigration court hostage, simply refuse to testify and refuse to participate in proceedings and be able to make a due process claim. Wait. Who's holding who hostage? I'm sorry. The immigration court. Because essentially what his claim is here is that I didn't have a full and fair hearing because I wasn't able to present evidence. However, the full and fair hearing is the opportunity to present evidence. You know, I think I may end up ruling for the government on this one, reaching the merits because of the Bromfield case. But I have to say I'm somewhat troubled, and I'll just give you the numbers that come off the website. Starting in the numbers for this judge's denial of relief run from 2009 to 2014. In 2009 and 2010, the denial rates were somewhere in the low 80s. In 2011, it's 95. 2012, 13, and 14, it looks as though the denial rates were around 99%. And the overall for all six of those years, the denial rate is 93.8% by comparison to the average denial rate in Los Angeles of 60%. So there's something wrong with this immigration judge. I'm not in a position to decide who the immigration judges are. I'm not in a position to discipline the immigration judges and so on. But the government should be aware that you've got a problem here. If people are forced to appear in front of this immigration judge, they're not going to get a fair shake. Your Honor, I can't speak to the statistics. I can simply speak to the matter at hand and in this particular case. And if I can, if it's okay, Judge Wardlaw, just a couple of procedural questions in terms of the A number. So here the IJ asks the witness for the AFAL number, correct? Having worked in the government a long time, I know the government can figure out someone's A number fairly easily, especially if someone has citizenship, it can be determined. If the IJ had asked the government, government counsel, do you know this individual's A number, would the government have been in a position at some point, maybe not right then, but at some point to provide this information to the IJ? To be frank, I can't speak to that. I simply can't say whether or not the mother did provide a waiver for her AFAL in this case so that the government would have access to it. I don't know in what types of circumstances the government could have had access to his AFAL without opening up. I think the question was the number, not access. The number itself? Right. Wasn't that what the IJ requested was the number? Yes, but I... I guess you have the same answer. Essentially, yes. To make it clear for the record, it was the judge that asked for the A number. It's at 178, lines 22 to 25 and 179. Okay. You and your co-counsel or adversary agree on that point. And that would go to the judges again. And the request came not initially when the expert's declaration or what he was going to testify in the expert list was brought up in front of the court. The judge was not concerned at that point about the expert's A number or following the an hour of testimony when it was discovered that the expert immigrated to the United States that the judge insists on having the A number. That in and of itself is the judge taking the role of an advocate. There was quite a bit of exchange, cross-examination by the judge during the expert's testimony about his qualifications. And when you couple that with the ultimatum that was put on the expert to provide his A number, we could say that there was definitely bias and that the petitioner was not given his due process rights to full and fair hearing. And that also would go to the issue about his withholding of removal. He was not able to put on the expert testimony to further elaborate on the petitioner's membership of a particular social group. And in that instance, the petitioner did provide evidence of deportees from the United States who were sent back to Armenia, conscripted back into the army there, and then were severely mistreated to one where he eventually committed suicide because of his mistreatment. All right. Thank you, counsel. Thank you. Havisian v. Helger is submitted, and we will take it Graham v. Harrington.
judges: Wardlaw, Fletcher, Owens